IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| BRIAN POLSON, | ) | Case No. |
| | ) | |
| Plaintiff, | ) | COMPLAINT |
| vs. | ) | and JURY DEMAND |
| | ) | in LINCOLN, NEBRASKA |
| GAGE COUNTY, NEBRASKA, | ) | |
| | ) | |
| Defendant. | ) | |

COMES NOW the Plaintiff, Brian Polson, by and through his attorney, and for his complaint against the Defendant states and alleges as follows:

1.  This is an action for violations of the Americans with Disabilities Amendments Act (ADA), as amended, 42 U.S.C.A. §§ 12101 *et. seq.*, Title VII of the Civil Rights Act (Title VII), as amended, 42 U.S.C.A. §2000(e), *et. seq.*, the Family Medical Leave Act (FMLA), 29 U.S.C.A. §2601 *et. seq.*, and the Nebraska Fair Employment Practices Act (NFEPA), Neb. Rev. Stat. §48-1101 *et. seq.*.

2.  This Court has original jurisdiction over the federal law claims and concurrent jurisdiction over the state law claims.

3.  At all times relevant, Brian Polson was a citizen of the State of Nebraska.

4.  Defendant, Gage County, Nebraska, is a political subdivision located within the State of Nebraska.

5.  Upon information and belief, Defendant is an employer as that term is defined by the statutes referenced herein.

6.  The unlawful employment practices alleged herein took place in Gage County, Nebraska.

1

7. Plaintiff filed timely administrative actions with the Nebraska Equal Employment Opportunity Commission (NEOC) and the Equal Employment Opportunity Commission (EEOC) in August 2024.

8. The NEOC issued its determination on April 14, 2025 and the EEOC issued a Right to Sue Notice on May 5, 2025. The instant action is timely.

9. The Plaintiff is male and is disabled as that term is defined pursuant to the ADA and NFEPA.

10. Plaintiff commenced employment with the Defendant in August 2020, and most recently held the position of Corrections Officer with the Gage County, Nebraska Sheriff's Department. At all times alleged, Plaintiff's work performance was satisfactory.

11. As a benefit of his employment with the Defendant, the Plaintiff was offered health insurance coverage for himself and his spouse. Except as otherwise described herein, Plaintiff and his wife were insured by the family health insurance coverage provided through the Defendant.

12. On or about April 8, 2024, Plaintiff returned to work as a Corrections Officer following a medical leave of absence necessitated by a serious medical condition.

13. When Plaintiff returned to work on or about April 8, 2024, he requested reasonable accommodation in the form of light duty work as ordered by his medical provider. Defendant granted Plaintiff's reasonable accommodation request by placing him on light duty.

14. Upon Plaintiff's return to work on April 8, 2024, Dawn Hill, County Clerk of Gage County, Nebraska, refused to immediately reinstate Plaintiff's employer provided health insurance for himself and his spouse. The Plaintiff and his wife were both previously insured by

health insurance provided to them by the Defendant. Hill told the Plaintiff that he was ineligible for reinstatement of his health insurance until he had worked for two full weeks, citing the fact that he was on light duty. Hill's actions were contrary to Defendant's policies, practices and state and federal law.

15. On or about April 22, 2024, after Plaintiff had worked two full weeks, he asked Hill to reinstate the employer provided health insurance for himself and his wife. Contrary to her earlier statements, Hill refused to reinstate his employer provided health insurance and told Plaintiff it would be reinstated only after he had worked four weeks.

16. Plaintiff reported Hill's discriminatory and retaliatory failure to reinstate his health insurance to Millard Gusteson, Sheriff of Gage County, Nebraska and to Trevor Rue, Gage County Jail Administrator. No action was taken to remedy the unlawful conduct.

17. On or about May 6, 2024, after the Plaintiff had worked four weeks for the Defendant, Hill again refused to reinstate his and his wife's employer provided health insurance coverage because he was working light duty. In fact, Hill told Plaintiff that his health insurance would not be reinstated at all while he was working light duty.

18. Plaintiff again reported Hill's discriminatory and retaliatory actions to Sheriff Gusteson and Jail Administrator Rue. No action was taken to remedy the unlawful conduct.

19. A similarly situated female employee of the Defendant who had returned to work light duty following an injury was provided with employer provided health insurance coverage immediately upon her return to work by the Defendant notwithstanding the fact that she, like the male Plaintiff, were both working light duty upon their return.

20. After requesting reasonable accommodation, on or about April 16, 2024, the Plaintiff was discriminated and retaliated against when Sheriff Gusteson ordered him to

immediately update and properly display tags on his personal vehicle, which Plaintiff does not deny were expired, but notes that other similarly situated employees of the Defendant who regularly drive personal vehicles with missing, expired, or improperly displayed tags, were not ordered to immediately update and properly display their vehicle tags.

21. On or about May 20, 2024, Plaintiff received a letter from Defendant's attorney, Pam Bourne, which informed Plaintiff that he was eligible for health insurance coverage as of April 8, 2024, his first day back to work following his medical leave. Defendant's illegal actions violated the legal opinion of its own attorney.

22. On or about May 22, 2024, Plaintiff was told by Jail Administrator Rue to no longer report to work, per the directive of Sheriff Gusteson. The defendant alleged that Plaintiff's unpaid suspension was due to lack of light duty work available. The defendant's proffered reason for suspending Plaintiff without pay on May 22, 2024 was both discriminatory and retaliatory as there was light duty work available for the Plaintiff to perform. The plaintiff remained on unpaid suspension until early September 2024.

23. The County did not suspend or otherwise place on unpaid leave the similarly situated female employee who was referenced in ¶19 who had also been assigned light duty work.

24. On or about July 3, 2024, Plaintiff received his employer provided health insurance cards; however, when he called the carrier to verify coverage, he was informed that he and his wife's health insurance coverage had been cancelled by the Defendant effective May 22, 2024.

25. In addition to all of the above, on or about January 20, 2024, Plaintiff learned that the Defendant, without Plaintiff's knowledge or consent, filed on his behalf a retroactive

application for FMLA leave for the time that Plaintiff had taken off work for a medical condition during the September through December 2023 time period.

26. Prior to the Defendant submitting the FMLA application on Plaintiff's behalf (without his knowledge or consent), Plaintiff had informed the Defendant that he did NOT want to use FMLA for the time that he was off work during the last four months of 2023. The defendant submitted the retroactive FMLA application in spite of Plaintiff's directive and without his knowledge or consent.

27. When the Defendant applied for retroactive FMLA leave on Plaintiff's behalf (without his knowledge or consent) in late 2023 or early 2024, it resulted in the Plaintiff and his wife being kicked off the employer provided health insurance at the low monthly rate previously charged to them for the coverage. The plaintiff was told that if he wanted the coverage to continue, he would have to apply for COBRA, which would have cost him and his wife hundreds of dollars more for the same coverage per month. Furthermore, the Plaintiff was unable to take FMLA leave in 2024 due to the exhaustion of his FMLA leave which resulted from Defendant's illegal submission of the retroactive FMLA application in late 2023 or early 2024. Defendant's actions substantially interfered with Plaintiff's FMLA rights.

28. During the time periods referred to herein when the Plaintiff and his wife were kicked off or otherwise denied health insurance coverage which should have been provided to them by the Defendant, they incurred medical bills and related expenses that would have been paid by health insurance had the Defendant not acted in an illegal manner.

29. The Defendant discriminated against the Plaintiff due to his disability and gender and retaliated against him after he engaged in one or more protected activities in violation of the ADA, Title VII, and the NFEPA. The Defendant also interfered with and otherwise violated

Plaintiff's FMLA rights by submitting, without his permission or knowledge and in directive contradiction of his known wishes, a retroactive FMLA application for time that he had missed from work in the last four months of 2023.

30. At all times alleged, Defendant's elected officials, officers, supervisors, employees and agents were acting in the scope and course of their employment with and/or elected or appointed office when the illegal actions occurred. The defendant's actions were willful and/or reckless.

31. As a result of the unlawful acts described herein, Plaintiff has sustained compensatory damages, lost wages, the value of job-related benefits, incurred medical bills for himself and his spouse, and will continue to incur such damages in the future.

## COUNT I

Plaintiff incorporates paragraphs 1 through 31 as if fully set forth herein.

32. Because of his disability, Defendant discriminated against the Plaintiff in violation of the ADA and NFEPA.

33. As a direct, proximate result of Defendant's illegal conduct, the Plaintiff has suffered compensatory damages and incurred lost wages, the value of job-related benefits and medical bills and will continue to incur such damages in the future.

## COUNT II

Plaintiff incorporates paragraphs 1 through 33 as if fully set forth herein.

34. After Plaintiff engaged in one or more protected activities, Defendant retaliated against him in the terms, conditions, and privileges of his employment. Such retaliatory conduct is violative of the ADA and NFEPA.

35. As a direct, proximate result of Defendant's illegal conduct, Plaintiff has suffered compensatory damages and incurred lost wages, the value of job-related benefits, and medical bills and will continue to incur such damages in the future.

## COUNT III

Plaintiff incorporates paragraphs 1 through 35 as if fully set forth herein.

36. Defendant discriminated against Plaintiff due to his gender in violation of Title VII and the NFEPA.

37. As a direct, proximate result of Defendant's illegal conduct, the Plaintiff has suffered compensatory damages and incurred lost wages, the value of job-related benefits and medical bills and will continue to incur such damages in the future.

## COUNT IV

Plaintiff incorporates paragraphs 1 through 37 as if fully set forth herein.

38. After Plaintiff engaged in one or more protected activities, Defendant retaliated against him in the terms, conditions, and privileges of his employment. Such retaliatory conduct is violative of Title VII and the NFEPA.

39. As a direct, proximate result of Defendant's illegal conduct, Plaintiff has suffered compensatory damages and incurred lost wages, the value of job-related benefits and medical bills and will continue to incur such damages in the future.

## COUNT V

Plaintiff incorporates paragraphs 1 through 39 as if fully set forth herein.

40. By submitting a retroactive FMLA application on Plaintiff's behalf, without his knowledge or consent, Defendant interfered with and otherwise violated the Plaintiff's rights arising under the FMLA.

41. As a direct, proximate result of Defendant's illegal conduct, the Plaintiff was unable to take FMLA leave in 2024, he has suffered compensatory damages and incurred lost wages and the value of job-related benefits and will continue to incur such damages in the future.

42. Due to the Defendant's willful or reckless conduct, the Plaintiff is entitled to liquidated damages under the FMLA.

WHEREFORE, Plaintiff requests judgment against the Defendant in the following respects:

(a) Declaring the acts of the Defendant to be in violation of state and federal laws;

(b) Award the Plaintiff lost wages and the value of job-related benefits as well as pre- and post-judgment interest;

(c) Award the Plaintiff an appropriate amount of monetary damages for his compensatory damage claims;

(d) Order the Defendant to reinstate the Plaintiff to his previously held position or award him front pay and an appropriate amount for the loss of job-related benefits in accordance with law;

(e) Award to the Plaintiff the cost of medical bills that he and his spouse incurred due to the Defendant's unlawful actions;

(f) Award Plaintiff an appropriate amount to offset taxes on the jury verdict;

(g) Award the Plaintiff liquidated damages under the FMLA;

(h) Award the Plaintiff attorney's fees and costs;

(i) Award such relief as this Court deems just and proper.

BRIAN POLSON, Plaintiff

s/Kathleen M. Neary
Bar Number: #20212
Attorney for Plaintiff
Powers Law
411 South 13th Street, Suite 300
Lincoln, NE 68508
Telephone: (402)474-8000
Fax: (402) 474-5006
E-mail: kathleen@vpowerslaw.com

**JURY DEMAND**

Plaintiff requests trial by jury in Lincoln, Lancaster County, Nebraska.

s/Kathleen M. Neary
Kathleen M. Neary #20212