IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| BRIAN POLSON,<br><br>    Plaintiff,<br><br>vs.<br><br>GAGE COUNTY, NEBRASKA,<br><br>    Defendant. | 4:25CV3144<br><br>MEMORANDUM AND ORDER |

  This matter comes before the Court on the Motion to Strike (Filing No. 10) filed by Defendant, Gage County, Nebraska. Defendant moves the Court to strike from Plaintiff's First Amended Complaint (Filing No. 3) Plaintiff's demands for a jury trial for his claims under the Nebraska Fair Employment Practices Act ("NFEPA") and Family Medical Leave Act ("FMLA"), as well as Plaintiff's prayer for compensatory damages as to his claim for retaliation under the Americans with Disabilities Amendments Act ("ADA"). For the following reasons, the Court will grant the motion.

## BACKGROUND

  Plaintiff has been an employee of Defendant since August 2020, and most recently worked as a Corrections Officer with the Gage County, Nebraska Sheriff's Department. (Filing No. 3 at p. 2). Plaintiff alleges that from September through December 2023, he took a medical leave of absence necessitated by a serious medical condition. Plaintiff alleges that, despite informing his employer he did not wish to use FMLA for this leave, Defendant filed a retroactive application for FMLA leave without Plaintiff's knowledge or consent. (Filing No. 3 at pp. 4-5).

  Upon his return to his work as a Corrections Officer on April 8, 2024, Plaintiff alleges he requested reasonable accommodation of light duty work as ordered by his medical provider, which Defendant granted. As a benefit of his employment, Plaintiff and his wife had family health insurance coverage provided through the Defendant. Plaintiff alleges, however, that Dawn Hill ("Hill"), County Clerk of Gage County, informed Plaintiff he was ineligible for immediate reinstatement of his employer provided health insurance for himself and his spouse and needed to work two full weeks first. Plaintiff alleges he then worked two full weeks, but on April 22, 2024,

Hill still refused to reinstate his employer provided health insurance plan, and stated Plaintiff needed to work four weeks.  Plaintiff alleges Hill's failure to reinstate his health insurance was discriminatory and retaliatory, and he reported it to the Sheriff of Gage County and the Gage County Jail Administrator.  Plaintiff alleges no action was taken.  (Filing No. 3 at pp. 2-3).

On May 6, 2024, after Plaintiff had worked four weeks, he again requested reinstatement of his health insurance coverage.  Hill again refused to reinstate his health insurance, and further told Plaintiff his health insurance coverage would not be reinstated at all while he was working light duty.  Plaintiff again reported Hill's failure to reinstate his health insurance to the Sheriff and the Gage County Jail Administrator, but no action was taken.  (Filing No. 3 at p. 4).  Plaintiff alleges a similarly situated female employee was permitted to return to work on light duty and was provided health insurance immediately upon her return.  (Filing No. 3 at p. 3).

On May 22, 2024, Plaintiff was suspended without pay purportedly due to the unavailability of light duty work available for Plaintiff to perform.  On July 3, 2024, Plaintiff received his employer provided health insurance cards, but was informed he and his wife's health insurance coverage had been cancelled by the Defendant effective May 22, 2024.  Plaintiff alleges Defendant's unauthorized application for FMLA leave on Plaintiff's behalf resulted in him losing his employer provided health insurance at the previously low monthly rate, and further prevented Plaintiff from taking FMLA leave in 2024.  (Filing No. 3 at pp. 4-5).

Plaintiff commenced this action on July 8, 2025, (Filing No. 1), and filed the First Amended Complaint (Filing No. 3) on July 16, 2025.  Plaintiff has asserted claims against Defendant for discrimination and retaliation under the ADA and NFEPA; gender discrimination and retaliation under Title VII and NFEPA; and violation of his rights under FMLA.  Plaintiff seeks damages for lost wages and the value of job-related benefits as well as pre- and post-judgment interest; compensatory damages; reinstatement to his previously held position or front pay and appropriate damages for loss of job-related benefits; medical bills incurred due to his loss of insurance coverage; and other damages.  Plaintiff has asserted a jury demand as to all claims.  (Filing No. 3).

Defendant has now filed a motion to strike Plaintiff's jury demand for his claims under the NFEPA and FMLA.  (Filing No. 10).  Defendant also moves to strike Plaintiff's request for compensatory damages as to his claim for retaliation under the ADA.  Defendant argues Plaintiff does not have a constitutional or statutory right to a jury trial against Gage County as a political subdivision of the State of Nebraska because although these statutes waive its sovereign immunity

from suit, there is no clear or express language waiving its sovereign immunity from jury trial. (Filing No. 11 at pp. 2-3). Defendant also argues the ADA does not expressly allow for the recovery of compensatory damages for Plaintiff's ADA retaliation claim. (Filing No. 11 at pp. 3-4).

## ANALYSIS

### I. Right to a Jury Trial for NFEPA and FMLA Claims

Defendant asserts that neither the NFEPA nor the FMLA explicitly provide a right to a jury trial, and the Seventh Amendment does not grant a right to a jury trial against the state and its political subdivisions, such as Gage County. (Filing No. 11 at p. 2). Before inquiring into the applicability of the Seventh Amendment in this case, the Court must first "'ascertain whether a construction of the statute is fairly possible by which the [constitutional] question may be avoided.'" *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 345 (1998) (quoting *Tull v. United States*, 481 U.S. 412, 417, n. 3 (1987)) (alteration in original; *accord Curtis v. Loether*, 415 U.S. 189, 192, n. 6 (1974) ("[T]he cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the (constitutional) question may be avoided."). If a statute is silent on the issue of jury trial, "then it is necessary to inquire whether a jury trial is constitutionally required under the Seventh Amendment." *Seals v. Bd. of Regents of Univ. of Nebraska*, No. 8:22CV420, 2024 WL 1416595, at *1 (D. Neb. Apr. 2, 2024) (quoting *Panazides v. Virginia Bd. of Education*, 13 F.3d 823, 827 (4th Cir. 1994)). In this case, the constitutional question cannot be avoided because the provisions of the NFEPA and FMLA do not contain explicit textual authorization for a jury trial. See Neb. Rev. Stat. § 48-1101; 29 U.S.C. § 2601.

The right to a jury trial in suits over twenty dollars at common law is a protection guaranteed by the Seventh Amendment. U.S. Const. amend. VII. "[T]he thrust of the [Seventh] Amendment was to preserve the right to jury trial as it existed in 1791," and "applies to actions brought to enforce statutory rights that are analogous to common-law causes of action ordinarily decided in English law courts in the late 18th century, as opposed to those customarily heard by courts of equity or admiralty." *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 41-42 (1989) (citing *Curtis*, 415 U.S. at 193). "To determine whether a statutory action is more similar to cases that were tried in courts of law than to suits tried in courts of equity or admiralty, the Court must

3

examine both the nature of the action and of the remedy sought." *Tull v. United States*, 481 U.S. 412, 417 (1987). The Supreme Court has established a two-part test to determine whether the Seventh Amendment applies to a particular cause of action. See *id.* at 417-18. First, the Court must compare the statutory action to an "18th century action brought in the courts of England prior to the merger of the courts of law and equity" in order to determine whether similar cases were brought before a jury. *Id.* If it is a type of action analogous to a suit customarily brought in the English law court, the Court must next determine whether the remedy sought is legal or equitable in nature. *Id.* If the remedy sought is legal in nature, then the Seventh Amendment provides a right to a jury trial. See *id.*

In this case, the Court must first determine whether Plaintiff's cause of action against Defendant under the NFEPA is analogous to an action that could have been brought at law in 1791. See *Curtis*, 415 U.S. at 194; *Tull*, 481 U.S. at 417. When the Seventh Amendment was adopted, there was no action equivalent to Plaintiff's NFEPA claim against Defendant, as a political subdivision. "[A]t common law no action for damages . . . lay against public officials acting in their official capacities as agents of the sovereign." *Buss v. Douglas*, 59 F.R.D. 334, 336 (D. Neb. 1973). "If the action is a common law suit or the particular issues arise in a common law suit, but no right of jury trial existed under the common law of England as to that type of action, then there is no right to a jury trial by virtue of the Seventh Amendment." *Westcott v. City of Omaha*, No. CV88-0-28, 1988 WL 383125, at *2 (D. Neb. Apr. 11, 1988). "[S]ince there was no common law right to sue the political subdivisions of the State of Nebraska, there was no Seventh Amendment right to a jury trial." *Gragg v. City of Omaha,* 812 F. Supp. 991, 992-3 (D. Neb. 1993) (citing *Galloway v. United States,* 319 U.S. 372, 388-9 (1943)).

As a political subdivision, Defendant is entitled to state sovereign immunity under the Eleventh Amendment, the Nebraska Constitution, and common law. See *Doe v. University of Nebraska,* 451 F. Supp. 3d 1062, 1101 (D. Neb. 2020). Although a sovereign may consent to a lawsuit against it or its agents, the consent must occur on the sovereign's own terms. See *United States v. Sherwood,* 312 U.S. 584, 586 (1941). "Courts 'give effect' to a state's waiver of sovereign immunity 'only where stated by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction.'" *Church v. Missouri*, 913 F.3d 736, 743 (8th Cir. 2019) (quoting *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 305 (1990)); see also *Burke v. Bd. of Trustees of Nebraska State Colleges*, 924 N.W.2d 304,

4

311 (Neb. 2019) ("A waiver of sovereign immunity is found only where stated by the most express language of a statute or by such overwhelming implication from the text as will allow no other reasonable construction."). "[A] waiver of sovereign immunity is to be strictly construed, in terms of its scope, in favor of the sovereign." *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 261 (1999); see also *Edwards v. Douglas Cnty.*, 953 N.W.2d 744, 750-51 (Neb. 2021) ("[S]tatutes purporting to waive the protection of sovereign immunity are to be strictly construed in favor of the sovereign and against waiver.").

Plaintiff contends that the Nebraska legislature waived sovereign and government immunity with respect to allowing a suit against a political subdivision for an alleged violation of the NFEPA. (Filing No. 14 at p. 1). Specifically, that under the NFEPA, the term "Employer…shall include the State of Nebraska, governmental agencies, and political subdivisions…." Neb. Rev. Stat. §48-1102(2). The State and its political subdivisions have waived sovereign immunity concerning an employee's ability to file suit under the NFEPA. See Neb. Rev. Stat. § 48-1119(4) ("A complainant who has suffered physical, emotional or financial harm as a result of a violation of [the NFEPA] may . . . file an action directly in the district court of the county where such alleged violation occurred."). Plaintiff further argues "[o]ther actions brought in the State District Courts of Nebraska which included a demand for damages akin to those allowed under the NFEPA, are tried to a jury unless expressly waived by the parties." (Filing No. 14 at pp. 1-2). Plaintiff concludes that he has thus not waived the right to a jury trial. (Filing No. 14 at p. 2).

The first step of the inquiry under *Tull* is to assess whether the NFEPA action is comparable to an "18th century action brought in the courts of England prior to the merger of the courts of law and equity" in order to determine whether similar cases were brought before a jury. *Tull*, 481 U.S. at 417-18. "Since there was no common law right to sue the political subdivisions of the State of Nebraska, there was no Seventh Amendment right to a jury trial." *Seals*, No. 8:22CV420, 2024 WL 1416595, at *2 (quoting *Abdulsalam v. Board of Regents of the University of Nebraska*, No. 4:22CV3004, 2023 WL 2374460, at *2 (D. Neb. Mar. 6, 2023)) see also *Tull*, 481 U.S. at 417 (requiring the court to first compare the statutory action to an "18th century action brought in the courts of England prior to the merger of the courts of law and equity" in order to determine whether similar cases were brought before a jury).

Defendant, as a political subdivision, has sovereign immunity. "Although Nebraska has, by statute, waived its sovereign immunity with respect to suits against its political subdivisions . . . this waiver is limited and does not permit such actions to be tried before a jury." *Villaneuva v. City of Scottsbluff,* No. 4:11CV31185, 2012 WL 45406 at * 1 (D. Neb. 2012) (citing *Rohren v. Centennial Public School Dist. 67-R,* 2007 WL 4118943 at *1 (D. Neb. 2007)). There is no provision in the NFEPA imposing a waiver of sovereign immunity that includes a right or requirement to jury trial. See *Casteel v. City of Crete*, No. 4:16CV3166, 2017 WL 3635184, at *3 (D. Neb. Aug. 23, 2017) ("there is no express language preserving the right to a jury trial against a political subdivision of the State."). Because there was no common law right to sue the political subdivisions of the State of Nebraska, there was no Seventh Amendment right to a jury trial. As such, Plaintiff is not entitled to a jury trial for his NFEPA claim against Defendant. See *Seals*, No. 8:22CV420, 2024 WL 1416595, at *2 (concluding a plaintiff had "no right to a jury trial on the NFEPA cause of action" against the State of Nebraska or its political subdivisions).

There is likewise no right to a jury trial on Plaintiff's FMLA claim. "The FMLA does not expressly provide for the right to a jury trial." *Harders v. Grand Island Pub. Sch.*, No. 4:06CV3076, 2006 WL 2528524, at *1 (D. Neb. Aug. 31, 2006). Thus, any right to a jury trial here rests on a Seventh Amendment analysis. *Id.* Courts have held that parties are entitled to a jury trial of FMLA actions for damages. *Id.* "These courts have reasoned that the remedial provisions of the FMLA reflect Congress' intent to make juries available to plaintiffs pursuing damage remedies, while leaving it to the judge to determine whether equitable relief is warranted." *Id.* (citing *Frizzell v. Sw. Motor Freight,* 154 F.3d 641 (6th Cir. 1998)). However, even if this FMLA cause of action is most akin to an action at law for damages, there is still no right to a jury trial "because at common law no action for damages ... lay against public officials acting in their official capacities as agents of the sovereign." *Id.*, at *2 (quoting *Buss v. Douglas*, 59 F.R.D. 334, 336 (D. Neb. 1973)).

Defendant, as a political subdivision, has sovereign immunity. Although the FMLA waives state sovereign immunity from suit, there is no provision in the FMLA imposing a waiver of sovereign immunity that includes a right or requirement to jury trial. Because there was no common law right to sue the political subdivisions of the State of Nebraska, there was no Seventh Amendment right to a jury trial. As such, Plaintiff is also not entitled to a jury trial for his FMLA claim against Defendant. See *Harders*, No. 4:06CV3076, 2006 WL 2528524, at *2 (striking the

plaintiff's jury demand after concluding the plaintiff "has no right to a jury trial of her FMLA action" against a political subdivision). Plaintiff's jury demand for his NFEPA and FLMA claims is therefore stricken.

## II.     Compensatory Damages for ADA Retaliation Claim

Defendant next asserts that Plaintiff is not entitled to compensatory damages for his ADA retaliation claim. (Filing No. 11 at p. 3-4). Plaintiff argues that "[a] plaintiff may seek compensatory damages under the ADA for emotional distress." (Filing No. 14 at p. 2). Specifically, Plaintiff relies on *Foster v. Time Warner Entm't Co. L.P.*, 250 F.3d 1189 (8th Cir. 2001), wherein the Eighth Circuit Court of Appeals upheld an award of compensatory and punitive damages on an ADA retaliation claim. *Foster v. Time Warner Entm't Co., L.P.*, 250 F.3d 1189 (8th Cir. 2001). However, the Eighth Circuit in *Foster* did not directly address the issue of whether compensatory damages are available for a retaliation claim under the ADA. See *Equal Emp. Opportunity Comm'n v. CRST Int'l, Inc.*, 351 F. Supp. 3d 1163 (N.D. Iowa 2018) (discussing *Foster* and recognizing, "[t]he Eighth Circuit only addressed 1) whether plaintiff proved all elements of her case, 2) whether the damages award was excessive, and 3) whether the district court erred in its evidentiary rulings and jury instructions.").

Plaintiff's ADA retaliation claim arises under 42 U.S.C. § 12203. The statute does not list specific remedies available for retaliation claims, but "adopts the remedies available under 42 U.S.C. § 12117, which, in turn, adopts the remedies provided by 42 U.S.C. 2000e-5. Section 2000e-5(g) authorizes an award of certain equitable relief, such as back pay and reinstatement." *Harms*, No. 8:17CV301, 2017 WL 6501848, at *1. While the Civil Rights Act of 1991 expands the remedies available under 42 U.S.C. 2000e-5 by providing for punitive and compensatory damages for certain claims, the statutes does not expressly allow for recovery of compensatory damages for ADA retaliation claims under § 12203. See *Harms v. City of N. Platte*, No. 8:17CV301, 2017 WL 6501848, at 2 (D. Neb. Dec. 19, 2017). Further, there is no language in the statute suggesting compensatory damages are available for ADA retaliation claims. See *National R.R. Passenger Corp v. National Ass'n of R.R. Passengers*, 414 U.S. 453, 458 (1974) ("A frequently stated principle of statutory construction is that when legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume

other remedies"). Defendant relies on *Harms v. City of N. Platte*, wherein Judge Bazis[1] concluded compensatory damages are not available for ADA retaliation claims. No. 8:17CV301, 2017 WL 6501848, at 2 (D. Neb. Dec. 19, 2017). In *Harms*, Judge Bazis recognized "there is a split of authority on this issue," but ultimately found the reasoning of the courts that have concluded that compensatory damages are not available for ADA retaliation claims most persuasive. *Id.* 2017 WL 6501848, at *2 (striking a plaintiff's request for compensatory damages on his ADA retaliation claim from his complaint). The Court agrees and concludes that Plaintiff may not recover compensatory damages on his ADA retaliation claim. Plaintiff's request for compensatory damages as to his ADA retaliation claim is therefore stricken. Accordingly,

**IT IS ORDERED:**

1. Defendant's Motion to Strike (Filing No. 10) is granted.
    a. Plaintiff's demand for a jury trial as to his claims under the NFEPA and FMLA is stricken from his First Amended Complaint.
    b. Plaintiff's request for compensatory damages as to his ADA retaliation claims is stricken from his First Amended Complaint.
2. Defendant shall file an answer to the First Amended Complaint on or before **November 6, 2025**.

Dated this 23rd day of October, 2025.

BY THE COURT:

s/ Michael D. Nelson
United States Magistrate Judge

---

[1] United States District Judge Susan M. Bazis, then a United States Magistrate Judge.